FILED
JUL 01 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN CHANOUZAS and JULIANE
CHANOUZAS,

        Plaintiffs,

v.

U.S. BANK NATIONAL
ASSOCIATION, a federally chartered
national bank, and U.S. BANCORP, a
Delaware corporation,

        Defendants.

CV. 09-469-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

        Plaintiffs John and Juliana Chanouzas brought this action arising out of defendant U.S. National Bank Association's alleged mishandling of their property stored in a safe deposit box at a U.S. Bank branch in Oregon. The Chanouzas further allege that U.S. Bancorp directed or

Page 1 - FINDINGS AND RECOMMENDATION

controlled U.S. Bank's refusal to return the property stored in the safe deposit box and unlawfully interfered with their business relationship with U.S. Bank. Plaintiffs' Motion for Remand and Bancorp's Motion for Summary Judgment are now before the court. For the reasons set forth below, plaintiffs' motion should be granted in part and denied in part and Bancorp's motion should be denied as moot.

## BACKGROUND

Defendant U.S. Bank National Association (U.S. Bank) is a federally chartered bank with its headquarters in Ohio and its principal place of business in Minnesota. Defendant U.S. Bancorp is the parent company of U.S. Bank and is a Delaware corporation with its principal place of business in Minnesota. Bancorp and U.S. Bank are separate legal entities.

According to the first amended complaint, in December 2005, the Chanouzas entered into a contract with U.S. Bank to rent a safe deposit box at a U.S. Bank branch in Oregon. The Chanouzas used the box to store jewelry, currency, a compact disk containing a backup of their personal computer, and other valuable personal items. The Chanouzas allege that in April 2008, U.S. Bank opened their safe deposit box without their permission and subsequently lost their backup disk and failed to secure the disk so that bank employees or others did not have access to it. The Chanouzas also claim that U.S. Bank did not inform them of its decision to open their box until late July 2008.

After the Chanouzas learned that U.S. Bank had opened the box, they requested that the bank return their property. They allege that U.S. Bank refused to return their property until they released the bank and its employees from any liability in opening the safe deposit box, losing their property and allowing individuals to have access to their property. They further allege that

U.S. Bancorp directed or controlled U.S. Bank's efforts to shield the bank from responsibility for its wrongful acts.

The complaint states seven claims for relief. It alleges common law negligence, conversion and trespass to chattel and seeks $65,000 in damages for each of those claims "against both defendants jointly and severally" as well as punitive damages on the conversion and trespass to chattel claims. It further alleges breach of contract, invasion of privacy, and violation of the Oregon Unlawful Trade Practices Act against U.S. Bank only and seeks $65,000 in damages for each of those claims, as well as punitive damages on the invasion of privacy and Unlawful Trade Practices Act claims and attorney fees for the Unlawful Trade Practices Act claim. Finally, it alleges intentional interference with a business relationship against Bancorp only and seeks $65,000 on that claim in addition to punitive damages.

Under a heading stating, "Waiver of Damages in Excess of $65,000," the complaint states that the Chanouzas "waive any and all economic and non-economic damages in excess of $65,000.00 whether or not one or both of the defendants are found liable jointly or severally." (First Am. Compl. at 14.) The waiver, however, does not include "punitive damages, attorney fees, or costs that may be awarded." *Id.* In addition, following the waiver, the complaint states that plaintiffs seek damages in the amount of $65,000 for each of their claims.

Before removing to this court, defendants asked plaintiffs to amend the complaint to clarify that plaintiffs seek no more than $65,000 total, including punitive damages and attorney fees. When plaintiffs did not respond, defendants removed the case but offered to stipulate to remand under the same condition that plaintiffs clarify that they seek no more than $65,000 total, inclusive of punitive damages and fees. Plaintiffs did not accept the offer.

Page 3 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARD

Upon a party's motion to remand, a federal court can remand a case to state court for lack of subject matter jurisdiction at any time before the court issues a final judgment. 28 U.S.C. § 1447(c). The party opposing the motion for remand has the burden of proving federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). After the court examines possible bases for federal jurisdiction, any remaining doubt favors remand. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

## DISCUSSION

An action filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a), the federal courts have original jurisdiction over controversies in excess of $75,000 between parties of diverse citizenship. 28 U.S.C. § 1332(a). Here, the parties do not dispute that diversity of citizenship exists. Rather, plaintiffs argue that the complaint does not meet the amount in controversy requirement for diversity jurisdiction.

### A.    Amount in Controversy Requirement

When a defendant removes a case from state court, the defendant bears the burden of establishing federal jurisdiction, including the amount in controversy requirement. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where the complaint is unclear and does not specify a total amount in controversy, a defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-701 (9th Cir. 2007) (district court properly applied a preponderance of the evidence standard where the complaint alleged

Page 4 - FINDINGS AND RECOMMENDATION

that each plaintiff's damages were less than $75,000 but the prayer for relief did not include a total dollar amount in controversy and sought several forms of relief in addition to damages).

Courts decide whether the amount in controversy requirement has been met by first considering whether it is "facially apparent" from the complaint. *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the court may then consider facts in the removal petition and may require the parties to submit evidence. *Id.* Where a plaintiff seeks actual and punitive damages, the courts consider both in determining the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943). In addition, where the underlying statute authorizes an award of attorney fees, the court may include such fees in the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

Here, the complaint seeks punitive damages and attorney fees, both of which are available under applicable Oregon law. "Punitive damages are allowed in Oregon to punish a willful, wanton or malicious wrongdoer and to deter that wrongdoer and others similarly situated from like conduct in the future." *Honeywell v. Sterling Furniture Co.*, 310 Or. 206, 210, 797 P.2d 1019 (1990). Although Oregon law prohibits plaintiffs from including a prayer for punitive damages in the initial complaint, Or. Rev. Stat. § 31.725, courts may still consider the potential for such damages when determining the amount in controversy. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001). In addition, the Oregon Unfair Trade Practices Act provides for an award of punitive damages and attorney fees. Or. Rev. Stat. § 646.638(1), (4).

In light of the availability of punitive damages and attorney fees for some of plaintiffs' claims, the complaint does not specify a total amount in controversy. The complaint states that

Page 5 - FINDINGS AND RECOMMENDATION

the plaintiffs waive "economic and non-economic damages" in excess of $65,000 but that waiver does not include the punitive damages or attorney fees that plaintiffs seek on certain claims. Thus, the total amount in controversy remains unclear. As a result, a preponderance of the evidence standard applies to the defendants' claim that the case meets the amount in controversy requirement.

A court may aggregate claims of one plaintiff against multiple defendants and of multiple plaintiffs against one defendant where the claims are "common and undivided so that the defendants' liability is joint and not several." *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir. 1978) (citation omitted). Here, however, the waiver in the complaint states that the plaintiffs hold U.S. Bank and Bancorp, in any combination, responsible for no more than $65,000 plus fees and punitive damages. Although the complaint goes on to state that plaintiffs seek a judgment of $65,000 in damages on each claim, that statement follows the general waiver of damages. Thus, while the complaint is not a model of clarity, I read it to state that the Chanouzas seek no more than $65,000 in total damages, plus punitive damages and attorney fees. The Chanouzas have admitted as much both in their briefing and in oral argument.

Plaintiffs' waiver, however, is ineffective to defeat diversity jurisdiction over their claims against U.S. Bank. Because plaintiffs excluded punitive damages and attorney fees from their waiver of damages in excess of $65,000, the amount in controversy in the claims against U.S. Bank is $65,000 at a minimum. Although plaintiffs counsel stated at oral argument that the attorney fees are not significant because they seek them only for their Oregon Unlawful Trade Practices Act claim, I can discern no reasonable basis for finding that claim less important than any other claim in this case at this stage. Moreover, while the defendants did not provide the

Page 6 - FINDINGS AND RECOMMENDATION

court with any specific information on the amount of attorney fees that might accrue in this case, in this court's experience, the attorney fees will more likely than not exceed $10,000 should this case proceed to trial. Therefore, the court should deny plaintiffs' motion to remand the claims against U.S. Bank.

The allegations against Bancorp, however, do not meet the jurisdictional threshold for the amount in controversy. In light of the waiver of additional damages, the amount in controversy against Bancorp is $65,000 in addition to punitive damages. Defendants have submitted no evidence to show that the potential punitive damages will exceed $10,000 and in fact conceded at oral argument that the punitive damages are insufficient to exceed the $75,000 jurisdictional threshold. Moreover, unlike attorney fees, an allegation of punitive damages is more speculative in terms of the amount of a potential award. Accordingly, I find that the prospect that Bancorp may have to pay punitive damages, without evidence of comparable awards, does not suffice to reach the amount in controversy requirement for diversity jurisdiction.

Where a court's original jurisdiction rests solely on diversity, the court may not exercise supplemental jurisdiction over claims against additional parties that do not meet the requirements for diversity jurisdiction. 28 U.S.C. § 1367(b); *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 560 (2005). Here, because the claims against Bancorp do not meet the amount in controversy requirement of 28 U.S.C. § 1332, the court cannot exercise supplemental jurisdiction over those claims. The court should therefore grant plaintiffs' motion to remand the claims against Bancorp to state court.[1]

---

1 This ruling requires that plaintiffs pursue their claims against Bancorp and U.S. Bank separately, including claims where the plaintiffs have alleged that the defendants are liable jointly and severally. While I recognize the inefficiencies presented by this scenario, the plaintiffs could have avoided this result by stipulating to remand, as defendants suggested, or by amending the complaint to clearly allege an amount in controversy less than the threshold

### B.  Attorney's Fees Under 28 U.S.C. § 1447(c)

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, courts may award attorney fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

Here, plaintiffs seek attorney fees under § 1447(c). The defendants, however, did not lack an objectively reasonable basis for seeking removal because the complaint was unclear regarding the total amount in controversy. The court should therefore deny plaintiffs' request for attorney fees.

### CONCLUSION

Plaintiffs' Motion for Remand (#12) should be granted in part and denied in part. The court should grant plaintiffs' motion to remand the claims against Bancorp and deny plaintiffs' motion to remand the claims against U.S. Bank. The court should deny plaintiffs' request for attorney fees. Bancorp's Motion for Summary Judgment (#6) should be denied as moot in light of the court's lack of subject matter jurisdiction.

### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 15, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and

---

for federal diversity jurisdiction.

Recommendation(s) will be referred to a district court judge and go under advisement.

Dated this 1st day of July, 2009.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge